IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAZRA ZAHOOR | ) | |
| | ) | |
| Petitioner, | ) | No. 07 C 1206 |
| | ) | |
| | ) | Judge Joan H. Lefkow |
| v. | ) | |
| | ) | |
| MUHAMMED ZIA | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Petitioner, Shazra Zahoor, a resident of Canada, filed a Petition for Warrant in Lieu of a Writ of Habeas Corpus in this court on March 2, 2007 seeking relief under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601 *et seq.*, which is the federal statute implementing the Hague Convention on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 (Oct. 25, 1980) ("Hague Convention"). Zahoor is the mother of a nine-year-old boy, Haider Mehdi. She alleges that Haider has been illegally held in Illinois by his biological father, respondent Muhammed Zia, since March 3, 2006. Before the court is Zahoor's motion for summary judgment [#47]. For the reasons set forth below, the court denies her motion [#47] and dismisses her petition [#1].

**RELEVANT FACTS**

Haider was born on March 9, 2000 in Ontario, Canada. He is the son of Zahoor and Zia, who were engaged in an extra-marital affair at the time of his conception and have never married. For the first three years of his life, Haider lived with Zahoor and her husband, Zahoor

1

Uh Hassan, in Canada. At all relevant times, Zia has resided in Chicago, Illinois. On October 21, 2002, based on a motion filed by Zahoor, the Ontario Court of Justice issued an order granting Zahoor and Hassan custody of Haider. Zia was not notified of the motion and, as a result, was not present at the hearing in which the motion was granted. He was informed of the order only after it was entered, at which time he wrote a letter to the court expressing his disagreement with the order and his concern for Haider's safety. On February 17, 2003, the Ontario Court of Justice issued another order granting Zahoor and Hassan custody of Haider. Zia was not present at the hearing in which this order was granted either, and the parties disagree as to whether he was given notice.

Later in 2003, Zahoor and Hassan traveled to Chicago on two separate occasions to ask Zia if he would assume custody of Haider. As a result of their visits, in December 2003, Zahoor and Zia executed a custody agreement. The agreement was drafted by Zia's attorney, and while Zahoor was encouraged to obtain independent legal counsel, she refused to do so. Zahoor did, however, speak with Zia's attorney on several occasions prior to the execution of the agreement. The agreement granted Zia sole custody of Haider, stating that he "shall have the care, custody, control and education of [Haider]" and that he may claim Haider as a dependent on his United States tax filings. Settlement Agreement, attached as Ex. A to Respondents' Resp. to Petitioner's Mot. for Summ. J. (hereinafter "the Agreement."). It allowed Zahoor to have "reasonable and liberal visitation," provided that she notify Zia in writing of her intent to visit and not interfere with Haider's schooling in Chicago. *Id.* Visitation was to take place in Chicago, unless the parties agreed in writing to an alternative location. *Id.* The agreement stated that "[t]he unrepresented party, [Zahoor], has read this Marital Settlement Agreement,

thoroughly understands its contents, and signs it voluntarily." *Id.* Both parties signed the agreement on December 30, 2003.

On January 14, 2004, a Circuit Court of Cook County entered an order granting Zia sole care, custody, control, and education of Haider, incorporating the terms of the Agreement into its order. A few days later, Zahoor brought Haider to Chicago to live with Zia. She returned to Canada the same day.

On February 22, 2004, Zahoor wrote Zia a letter stating that she intended to visit Haider in Chicago on February 27, 28, and 29. Zahoor arrived in Chicago on February 27 and spent the next three days with Haider. Zahoor and Zia arranged for Zia to retrieve Haider from Zahoor's motel the evening of February 29. When Zia arrived at the motel, however, he was informed that Zahoor had already checked out. Unable to locate Zahoor and Haider, Zia filed a complaint with the Chicago Police Department, which investigated the matter. The Chicago police determined that Zahoor purchased two one-way tickets from Chicago to Canada on February 29 and that she took Haider back to Canada. The Chicago police issued a warrant for Zahoor's arrest in Chicago but could not effectuate it because Zahoor was in Canada when the warrant was issued. Within a week of issuing the warrant, the Chicago police contacted the local Canadian police. On March 1, 2004, the local Canadian police went to Zahoor's home in Ontario and informed her that there was a warrant out for her arrest in Chicago.

Haider remained in Canada with Zahoor from February 29, 2004 until March 3, 2006. He attended kindergarten there from September 7, 2005 until February 27, 2006. Some time in February 2006, Zia phoned Zahoor and asked her if he could see Haider. On March 3, 2006, Zahoor drove Haider to the United States, presumably to visit Zia, but was stopped at the border

3

between Canada and Michigan. At the border, Zahoor was arrested and charged with child abduction. The Michigan police contacted Zia and asked him to retrieve Haider from the police station, where Haider was taken after Zahoor's arrest. Zia retrieved Haider that day and, since then, Haider has lived with Zia in Chicago.

Zahoor was released on bond on March 8, 2006. A condition of her bond was that she not have any contact with either Zia or Haider. On October 24, 2006 Zahoor was convicted of child abduction in Cook County. She was sentenced to 12 months probation.

On May 15, 2006, Zahoor filed a petition in Cook County to vacate the January 14, 2004 order granting Zia full custody of Haider. On June 15, 2006, however, she agreed to withdraw her petition. A little less than a year later, on March 2, 2007, Zahoor filed a petition in this court under the Hague Convention, alleging that Zia has been wrongfully retaining Haider in Chicago since he retrieved him from the Michigan police station on March 3, 2006 and requesting that the court return Haider to Canada.

## **LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) Advisory Committee Notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the

4

evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia,* 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## **ANALYSIS**

Zahoor argues that she is entitled to summary judgment because she has established a *prima facie* case of wrongful retention under the Hague Convention and because Zia cannot show that any exception to the Hague Convention applies to her case. Zia argues that Zahoor is not entitled to summary judgment and further that Zahoor's petition should be dismissed because she cannot establish a *prima facie* case of wrongful retention. Even if she can establish a *prima facie* case, Zia argues, she is still not entitled to summary judgment because an exception to the Hague Convention, its statute of limitations, is applicable to the case at bar. Because the court finds that Zahoor cannot establish a *prima facie* case of wrongful retention, it need not address the parties' arguments regarding the applicability of the statute of limitations exception.

**I.     The Hague Convention**

ICARA, which implements the Hague Convention, entitles a parent whose child has been wrongfully removed or retained in the United States to petition a federal court to order the child returned. "The convention is aimed at parties to custody battles who remove the child from the

child's domicile to a country whose courts the removing parent thinks more likely to side with that parent." *Kijowska* v. *Haines*, 463 F.3d 583, 586 (7th Cir. 2006) (citations omitted). The Hague Convention does not allow this court to adjudicate the merits of a custody dispute; rather, "the court is to determine whether the child was removed or retained wrongfully from the child's habitual residence." *Thompson* v. *Brown*, No. 05-C-1648, 2007 WL 54100, at *4 (N.D. Ill. Jan. 3, 2007) (quoting *Giampaolo* v. *Erneta*, 390 F. Supp. 2d 1269, 1275-76 (N.D. Ga. 2004)). The removal or retention of a child is considered wrongful where

> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> (b) at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been exercised but for the removal or retention.

Hague Convention, art. 3, 19 I.L.M. at 1501.

To determine whether a child has been wrongfully removed or retained under the Hague Convention, courts address "a series of four questions: (1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?" *Mozes* v. *Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001); *Thompson*, 2007 WL 54100, at *5. If Zahoor prevails on these issues and can demonstrate that Haider was wrongfully retained in the United States, she has established a *prima facie* case under the Hague Convention and Haider must be "promptly returned [to Canada] unless one of the [four] narrow exceptions set forth in the Convention applies." 42 U.S.C. § 11601(a)(4).

6

## II. Habitual Residence

Zahoor contends that Zia has wrongfully retained Haider in the United States since March 3, 2006.[1] She further contends that at that time, Haider's habitual residence was in Canada. The viability of Zahoor's motion for summary judgment [and of her petition] turns on a determination of Haider's habitual residence. Indeed, if Haider's habitual residence at the time of his alleged wrongful retention was in the United States, then Zia's retention of Haider in the United States would not be considered wrongful under the Hague Convention. *See, e.g. Koch* v. *Koch*, 450 F.3d 703, 710 (7th Cir. 2006) ("If the habitual residence of the children at the time of their removal was the United States, then . . . [the father's] removal of the children to the United States would not be considered wrongful under the Convention.").

The Hague Convention does not specifically define the term "habitual residence." As a result, "[t]he inquiry into a child's habitual residence is not formulaic; rather, it is a fact-intensive determination that necessarily varies with the circumstances of each case." *Whiting* v. *Krassner*, 391 F.3d 540, 546 (3d Cir. 2004). Nonetheless, a few basic principles apply. Where, as here, a parent argues that a child's habitual residence changed from his original residence, a court must determine whether the child effectively abandoned his original habitual residence. Indeed, "[t]he first step towards acquiring a new habitual residence is forming a settled intention to abandon the one left behind." *Mozes*, 239 F.3d at 1067. Where, as here, a young child is involved, courts look to the intent of the child's parents; specifically asking "whether the parents shared an intent to abandon the prior habitual residence." *Koch*, 450 F.3d at 715.

---

[1] Zia argues that he has had possession of Haider, and therefore has retained Haider within the meaning of the Convention, since February 28, 2006. The court need not resolve the parties' disagreement as to timing, however, because regardless of the date of the retention, the court finds that it was not wrongful.

7

Courts recognize, however, that "[o]ften, by the time one parent has filed an action under the Convention for the return of the child, the parents no longer share an intent on the child's habitual residence." *Id.* at 713. In such cases, "representations of the parties likely cannot be accepted at face value," and a court should "determine from all the available evidence whether the parent petitioning for return of a child has already agreed to the child's taking up habitual residence where it is." *Id.* (internal quotation marks omitted). The Seventh Circuit recognizes various situations in which such a factual scenario might exist, including at one end of the spectrum cases where parents jointly take all of the steps associated with abandoning a prior habitual residence in one country to take it up in another. In such cases, courts are generally "unwilling to let one parents' reservations about the move stand in the way of finding a shared and settled purpose." *Id.* At the other end of the spectrum are cases where the petitioning parent consented at one time to let the child stay abroad for a finite period of time. In these cases, courts also generally refuse to allow the changed intentions of one parent to alter the child's habitual residence. *Id.* In the middle are cases "where the petitioning parent earlier consented to let the child stay abroad for some period of ambiguous duration. In these cases, the circumstances surrounding the child's stay may sometimes suggest that, despite the lack of perfect consensus, the parents intended the stay to be indefinite, leading to an abandonment of the prior habitual residence." *Id. See also In re Polson*, 578 F. Supp. 2d 1064, 1071 (S.D. Ill. 2008). The case at bar falls within this middle set.

Zia argues that the agreement he and Zahoor executed in December 2003 is evidence that Zahoor consented to let Haider stay in Chicago for the indefinite future and also evidence that at that time, he and Zahoor shared an intent to change Haider's habitual residence from Canada to

8

the United States. Zahoor argues that the agreement did not reflect her true intentions because she did not understand it. Specifically, she contends that she believed the agreement awarded her joint custody, explaining that she held this belief because she did not understand English, the language of the agreement. Zahoor has not produced a single piece of evidence to support her contention, however, and her actions cast serious doubt on its truthfulness. First, she spoke in English with Zia's attorney about the agreement on several occasions prior to signing it. Second, per the terms of the agreement, she brought Haider to the United States and left him with Zia. Third, when she decided to exercise her visitation rights, she wrote Zia a letter in English, in conformity with procedures outlined in the agreement. Finally, she took Haider to Canada without informing Zia of her intent to do so. This act is particularly significant. If Zahoor believed that she was entitled to joint custody, she would have no motive to remove Haider from the United States without first consulting Zia. Her actions reflect a sufficiently comprehensive understanding of the agreement and its terms. Because she has not produced any evidence from which a jury could conclude otherwise, the court finds Zahoor's contention that she did not possess such an understanding to be without merit and will consider the agreement in determining Haider's habitual residence. *See* L.R. 56.1(a) (a party that moves for summary judgment must file "a statement of material facts . . . [supported by] specific references to the affidavits, parts of the record, and other supporting materials"); *de la Rama* v. *Ill. Dept. of Human Servs.*, 541 F.3d 681, 685 (7th Cir. 2008) (bare allegations do not give rise to genuine issues of fact).

The agreement reflects the shared intention of Zahoor and Zia that Haider reside in Chicago with Zia. The agreement requires Haider to live and attend school in Chicago, requires

9

that Zahoor's visitation take place in Chicago absent extenuating circumstances, requires Zia to secure medical insurance for Haider in Chicago, and allows Zia to claim Haider as a dependent in his tax filings with the United States government. Moreover, that Zahoor adhered to these substantive terms by bringing Haider to Chicago indicates that she and Zia both originally intended that Haider remain in Chicago with Zia indefinitely.

While shared parental intent is critical to a change in a child's habitual residence, it is not alone sufficient. Indeed, "[w]hen the decision to alter a child's habitual residence depends on the settled intentions of the parents, they cannot accomplish this transformation by wishful thinking alone." *Koch*, 450 F.3d at 715. There must also be (1) an actual change in geography and (2) the passage of an appreciable amount of time in the new location. *Id.*; *Mozes*, 239 F.3d at 1078-79. The stronger the indicia of intent to change habitual residence, the less time is required to effectuate a change. *Koch*, 450 F.3d at 715; *see also Mozes*, 239 F.3d at 1078 ("When the child moves to a new country accompanied by both parents, who take steps to set up a regular household together, the [amount of time] need not be long."). Here, Zahoor effectuated a change in geography by bringing Haider to Zia in Chicago. Further, though the amount of time that Haider spent in Chicago was brief, the court finds it sufficient to constitute an "appreciable amount of time," given the strong indications of the parties' intent as discussed above. *See Koch*, 450 F.3d at 715; *Mozes*, 239 F.3d at 1078.

While Haider spent the two years immediately preceding his retention in Canada, his presence there was a direct result of Zahoor's wrongful conduct, which led to a conviction for child abduction. Had Zahoor not acted in violation of the agreement she signed months earlier, Haider would have spent those two years in Chicago. Zahoor cannot act in derogation of her

contractual obligations and of the law and then rely on the consequences of her illegal acts to support her petition before the court.

Because the parties shared an intent to change Haider's habitual residence to Chicago and because Haider relocated to Chicago and spent an appreciable amount of time there, the court finds that Haider was a habitual resident of Chicago at the time of his retention on March 3, 2006. Because Haider was habitually resident in the United States, Zia's retention of him in Chicago on that date was not wrongful and the court need not engage in any further analysis. *See Koch*, 450 F.3d at 710. Zahoor's motion for summary judgment is denied and her petition is dismissed.

## CONCLUSION AND ORDER

For the reasons discussed above, Zahoor's motion [#47] is denied and her petition [#1] is dismissed. Judgment is entered in favor of Zia.


Dated: December 4, 2009          Enter: _____
                                        JOAN HUMPHREY LEFKOW
                                        United States District Judge